UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                CASE NO.: 8:24 cr 283 TPB-UAM

                                                  18 U.S.C. § 371
SUHAIB AHMAD                                      18 U.S.C. § 2320(a)(2)
MOHAMMAD AHMED
      a.k.a. Mohammad Ahmad
ADEL AHMAD

**INDICTMENT**

The Grand Jury charges:

JUN 25 2024 PM3:53
FILED - USDC - FLMD - TPA

**COUNT ONE**
**(Conspiracy)**

A.     **Introduction**

At all times material to this Indictment:

The Defendants

1.     SUHAIB AHMAD ("S. AHMAD"), a resident of Wesley Chapel,

Florida, in the Middle District of Florida, who was not a healthcare provider or a

licensed wholesale distributor of prescription drugs registered with the United States

Food and Drug Administration or the State of Florida, was an operator of Fastlink,

Inc. in Zephyrhills, Florida, as well as The Vape Galaxy LLC in Tampa, Florida.  S.

AHMAD was an authorized signer on Fastlink, Inc's business checking account at

Financial Institution #1 ending in -3854. S. AHMAD ordered, purchased, imported,

received, and distributed misbranded drugs. S. AHMAD also trafficked and

attempted to traffic in goods with counterfeit marks.

1

2.      MOHAMMAD AHMED a.k.a. MOHAMMAD AHMAD ("M. AHMED"), a resident of Tampa, Florida, in the Middle District of Florida, who was not a healthcare provider or a licensed wholesale distributor of prescription drugs registered with the United States Food and Drug Administration or the State of Florida, was an operator of Fastlink, Inc. in Zephyrhills, Florida, as well as The Vape Galaxy LLC in Tampa, Florida. M. AHMAD was an authorized signer on Fastlink, Inc's business checking account at Financial Institution #1 ending in -3854. M. AHMED ordered, purchased, imported, received, and distributed misbranded drugs. M. AHMED also trafficked and attempted to traffic in goods with counterfeit marks.

3.      ADEL AHMAD ("A. AHMAD"), a resident of Tampa, Florida, in the Middle District of Florida, who was not a healthcare provider or a licensed wholesale distributor of prescription drugs registered with the United States Food and Drug Administration or the State of Florida, was an operator of Fastlink, Inc. in Zephyrhills, Florida, as well as The Vape Galaxy LLC in Tampa, Florida. A. AHMAD ordered, purchased, imported, received, and distributed misbranded drugs. A. AHMAD also trafficked and attempted to traffic in goods with counterfeit marks.

### The Entities

4.      Fastlink, Inc. was a Florida corporation with a mailing address and principal place of business located at 35321 State Road 54, Zephyrhills, Florida

2

33541.  S. AHMAD was the corporation's registered agent and vice president. M. AHMED was the corporation's president.

5.     "Z Smoke Shop" was not a registered company, however, Fastlink, Inc. conducted business as Z Smoke Shop at 35231 State Road 54, Zephyrhills, Florida. Z Smoke Shop had a physical retail store that the defendants used to offer for sale various misbranded drugs and counterfeited goods.

6.     The Vape Galaxy LLC was a Florida limited liability company with a mailing address and principal place of business located at 13217 N. Nebraska Ave, Suite B, Tampa, Florida.  A. AHMAD was the company's registered agent and authorized member.

7.     "SWAV Wholesale" and "SWAV Warehouse" were not registered Florida companies, however, The Vape Galaxy LLC conducted business under these names in Tampa, Florida.

<u>The Food and Drug Administration's Regulation of<br>Drugs</u>

8.     The U.S. Food and Drug Administration ("FDA") was the federal agency charged with the responsibility of protecting the health and safety of the American public by enforcing the Federal Food, Drug, and Cosmetic Act ("FDCA").  Among other responsibilities, the FDA enforced laws and regulations intended to ensure that drugs were safe and effective for their intended uses.

9.     The FDCA, in relevant part, defined drugs as products that were "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of

3

disease in man or other animals" (21 U.S.C. § 321(g)(1)(B)); and "articles (other than food) intended to affect the structure or any function of the body of man or other animals" (21 U.S.C. § 321(g)(1)(C)).

10.     Under the FDCA, a "prescription drug" was any drug intended for use in humans that, because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary for its use, was not safe for use except under the supervision of a practitioner licensed by law to administer such drug; or was limited by an approved application under section 21 U.S.C. § 355 for use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(1).

11.     The term "label" included "written, printed, or graphic matter upon the immediate container of any article." 21 U.S.C. § 321(k). The term "labeling" was broader and was defined to include "all labels and other written, printed, or graphic matter (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. § 321(m).

12.     Under the FDCA, a drug was deemed misbranded if it was a prescription drug, and its label failed to bear the symbol "Rx only" at any time prior to dispensing.  21 U.S.C. § 353(b)(4)(A).

13.     A drug was also deemed misbranded if its labeling was false or misleading in any particular. 21 U.S.C. § 352(a)(1).

## Relevant Prescription Drugs

14.     Sildenafil and tadalafil, a phosphodiesterase type-5 (PDE-5) inhibitors, were the active pharmaceutical ingredients ("API") in Viagra and Cialis, respectively. Viagra and Cialis were FDA-approved prescription drugs used to treat erectile dysfunction.  Products that contained PDE-5 inhibitors posed serious health risks to consumers with underlying medical issues, such as heart disease and high blood pressure. Products that were intended to treat erectile dysfunction or for sexual enhancement were regulated as drugs under the FDCA because they were intended to treat a disease in humans and/or affect the structure or function of the human body. Based on the health risks and other associated concerns with sildenafil and tadalafil, drugs that contain these APIs were considered prescription drugs within the meaning of 21 U.S.C. § 353(b)(1), because they were not safe for use except under the supervision of a practitioner licensed by law to administer them.

## The Trademark Holders

15.     The Haribo Group was a multinational manufacturer of various gummi candies.  The Haribo Group had marks registered on the principal register in the United States Patent and Trademark Office that were in use on candy.

16.     Ferrara Candy Company was a manufacturer of candy and had marks registered on the principal register in the United States Patent and Trademark Office that were in use on candy.

5

17.     Kellogg North America Company was a cereal manufacturer and had marks registered on the principal register in the United States Patent and Trademark Office that were in use on cereals and snacks.

18.     Frito-Lay North America, Inc. was a corn chip, potato chip, and other snack food manufacturer and had marks registered on the principal register in the United States Patent and Trademark Office that were in use on corn chips, potato chips, and other snack foods.

### B.     The Conspiracy

19.     From in or around January 2021, and continuing through in or around August 2022, in the Middle of District of Florida and elsewhere, the defendants,

SUHAIB AHMAD,
MOHAMMAD AHMED, a.k.a. Mohammad Ahmad, and
ADEL AHMAD,

did knowingly and voluntarily combine, conspire, confederate, and agree with each other and others, known and unknown to the Grand Jury, to commit offenses against the United States, that is, the receipt in interstate commerce of misbranded drugs and the delivery or proffered delivery thereof for pay or otherwise, namely drugs containing sildenafil and tadalafil, in violation of 21 U.S.C. §§ 331(c) and 333(a)(1); and to traffic in counterfeit goods, in violation of 18 U.S.C. § 2320.

### C.     Manner and Means

20.     The manner and means by which the defendants sought to accomplish the purposes of the conspiracy included, among others, the following:

6

a.    It was part of the conspiracy that the defendants would and did own and manage a retail store in Zephyrhills, Florida, and a warehouse in Tampa, Florida, for the purpose of selling and delivering misbranded prescription drugs and counterfeit goods.

b.    It was further part of the conspiracy that the defendants and conspirators would and did receive misbranded prescription drugs, as well as counterfeit goods, at a warehouse under their control in Tampa, Florida.

c.    It was further part of the conspiracy that the defendants and conspirators would and did promote and sell misbranded prescription drugs for sexual enhancement and delivered or proffered for delivery these misbranded prescription drugs for pay or otherwise.

d.    It was further part of the conspiracy that the defendants and conspirators would and did cause misbranded prescription drugs to be introduced into the Middle District of Florida.

e.    It was further part of the conspiracy that the defendants and conspirators would and did communicate amongst themselves and others via a messaging application concerning the receipt and distribution of packages of misbranded prescription drugs, and counterfeit goods, destined to their warehouse and other businesses throughout the United States.

f.    It was further part of the conspiracy that defendants and conspirators would and did maintain financial accounts for payments and proceeds stemming from the misbranded prescription drugs.

g.      It was further part of the conspiracy that the defendants and conspirators would and did use proceeds to promote and perpetuate the conspiracy and otherwise for the conspirators' and others' personal enrichment and entertainment.

h.      It was further part of the conspiracy that the defendants and conspirators would and did misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the conspiracy and the acts performed in furtherance thereof.

## D.      Overt Acts

21.      In furtherance of the conspiracy, and to effect its objects, the defendants and other coconspirators committed the following overt acts, among others, in the Middle District of Florida, and elsewhere:

a.      On or about June 3, 2020, S. AHMAD and M. AHMED, opened business checking account ending in -3854 at Financial Institution #1 on behalf of Fastlink, Inc., which they then used to purchase unlawful products and to receive payment for the sale of unlawful products.

b.      On or about March 11, 2021, S. AHMAD created a group chat thread with M. AHMED, A. AHMAD, and others titled, "The Warehouse," and messaged the group, "Let's use this chat for warehouse convo. Pricing Invoices Orders revived etc".

c.      On or about June 16, 2021, the defendants invoiced a customer for $4,512.00 for a shipment of Black Bull Honey, Royal Honey Gold, and Jaguar

8

Power, constituting misbranded prescription drugs within the meaning of 21 U.S.C. §§ 352(a)(1) and 353(b)(4)(A), sent to the customer in Louisiana.

        d.      On or about August 26, 2021, at Z Smoke Shop, the defendants offered for sale several boxes and sachets of various types of misbranded prescription drugs within the meaning of 21 U.S.C. §§ 352(a)(1) and 353(b)(4)(A), to include the following: Royal Honey VIP, Secret Miracle Honey VIP, Amazing Honey, and Leopard Miracle Honey.

        e.      On or about October 29, 2021, the defendants were in possession and control of thousands of unlawful products stored in two units of a warehouse in Tampa, Florida.

        f.      The intentional trafficking in goods and knowing use of a counterfeit mark on and in connection with such goods described in Counts Two through Six below are further alleged and incorporated by reference as overt acts in furtherance of this conspiracy.

In violation of 18 U.S.C. § 371.

**COUNTS TWO - SIX**
**(Trafficking in Counterfeit Goods)**

**A.**    **Introduction**

22.    The allegations contained in Section A of Count One of this Indictment are realleged and incorporated by reference as though fully set forth herein.

**B.**     <u>**The Charges**</u>

23.     From at least in or about September 2021, and continuing through on or about October 29, 2021, in the Middle District of Florida, and elsewhere, the defendants,

SUHAIB AHMAD,
MOHAMMAD AHMED, a.k.a. Mohammad Ahmad, and
ADEL AHMAD,

did intentionally traffic and attempt to traffic in the goods listed below, knowingly using the specified counterfeit marks on and in connection with such goods, which the specified counterfeit mark was identical with and substantially indistinguishable from the genuine mark in use and registered for that good on the principal register in the United States Patent and Trademark Office, and the use of which mark was likely to cause confusion, mistake, and deception regarding said mark:

| Count | On or About Date | Counterfeit Good | Counterfeit Mark | Trademark Registration Number |
|-------|-----------------|-----------------|-----------------|-------------------------------|
| TWO | September 9, 2021 | Candy | "Sour S'ghetti" consisting of the stylized word "Sour" appearing above the word "S'Ghetti" | 5,297,100 |
| THREE | September 9, 2021 | Candy | Intertwined long cylindrical shapes resembling spaghetti shown in red, blue, and green | 5,297,068 |

| Count | On or About Date | Counterfeit Good | Counterfeit Mark | Trademark Registration Number |
|---|---|---|---|---|
| FOUR | September 9, 2021 | Candy | "Nerds" consisting of standard characters | 2,209,131 |
| FIVE | October 29, 2021 | Cereal | An illustrated drawing consisting of a stylized toucan | 4,692,578 |
| SIX | October 29, 2021 | Snack | An illustrated drawing consisting of a stylized cheetah | 2,719,801 |

In violation of 18 U.S.C. §§ 2320 and 2.

## **FORFEITURE**

1. The allegations contained in Counts One through Six of this Indictment are realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to the provisions of 18 U.S.C. § 2323, 21 U.S.C. § 334, and 28 U.S.C. § 2461(c).

2. Upon conviction of any or all of the violations alleged in Counts One through Six, the defendants shall forfeit to the United States of America, pursuant to 18 U.S.C. § 2323:(a) any article, the making or trafficking of which is, prohibited under section 2320; (b) any property used, or intended to be used, in any manner or part to commit or facilitate the commission of a violation of section 2320;  and (c) any and all property constituting or derived from any proceeds obtained directly or

11

indirectly as a result of the commission of the offenses.  Additionally, upon a conviction of Count One of this Indictment, the defendants shall forfeit to the United States of America, pursuant to 21 U.S.C. § 334 and 21 U.S.C. § 2461, any misbranded drug that was received in interstate commerce and delivered or proffered for delivery, including but not limited to any misbranded drugs containing sildenafil and tadalafil.

3.     The property to be forfeited includes, but is not limited to, an order of forfeiture in the amount of at least $1,500,000, representing the proceeds the defendant obtained as a result of the violation.

4.     If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred or sold to, or deposited with, a third party;

c.     has been placed beyond the jurisdiction of the court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty,

the United States shall be entitled to forfeiture of substitute property pursuant to 21

U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

███████████████████████████

Foreperson

ROGER B. HANDBERG
United States Attorney

By: _____

Tiffany E. Fields
Assistant United States Attorney

By: _____
FOR

Rachelle DesVaux Bedke
Assistant United States Attorney
Economic Crimes Section

13

FORM OBD-34
June 24

No:

## UNITED STATES DISTRICT COURT
### Middle District of Florida
### Tampa Division

## THE UNITED STATES OF AMERICA

vs.

Suhaib Ahmad
Mohammad Ahmed a.k.a. Mohammad Ahmad
Adel Ahmad

## INDICTMENT

Violations: 18 U.S.C. § 371; 18 U.S.C. § 2320(a)(2)

A true bill,

███████████████████████████

Foreperson

Filed in open court this 25th day

of June, 2024.

*Ashley Sanders*

**ASHLEY SANDERS**                Clerk

Bail $_____